## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-12205 |
| v. | ) ) | CLASS ACTION |
| KERYX BIOPHARMACEUTICALS, INC., KEVIN J. CAMERON, MARK J. ENYEDY, STEVEN C. GILMAN, MICHAEL T. HEFFERNAN, JODIE MORRISON, DANIEL P. REGAN, MICHAEL ROGERS, AKEBIA THERAPEUTICS, INC., and ALPHA THERAPEUTICS MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on June 28, 2018 (the "Proposed Transaction"), pursuant to which Keryx Biopharmaceuticals, Inc. ("Keryx" or the "Company") will be acquired by Akebia Therapeutics, Inc. ("Parent") and Alpha Therapeutics Merger Sub Inc. ("Merger Sub," and together with Parent, "Akebia").

2.     On June 28, 2018, Keryx's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with Akebia (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Keryx's stockholders will receive 0.37433 shares of Parent common stock for each share of Keryx they own.

3.     On October 1, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Keryx common stock.

9.     Defendant Keryx is a Delaware corporation and maintains its principal executive offices at One Marina Park Drive, 12th Floor, Boston, Massachusetts 02210.  Keryx's common stock is traded on the NASDAQCM under the ticker symbol "KERX."  Keryx is a party to the

Merger Agreement.

10.     Defendant Kevin J. Cameron is a director of Keryx.

11.     Defendant Mark J. Enyedy is a director of Keryx.

12.     Defendant Steven C. Gilman is a director of Keryx.

13.     Defendant Michael T. Heffernan is a director of Keryx.

14.     Defendant Jodie Morrison is the Interim Chief Executive Officer and a director of Keryx.

15.     Defendant Daniel P. Regan is a director of Keryx.

16.     Defendant Michael Rogers is Chairman of the Board of Keryx.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

19.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Keryx (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable.  As of June 22, 2018, there were approximately 120,378,658 shares of Keryx common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others: (i)

whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

### *Background of the Company and the Proposed Transaction*

27.     Keryx is focused on the development and commercialization of innovative medicines that provide unique and meaningful advantages to people with kidney disease.

28.     There are two U.S. Food and Drug Administration ("FDA")-approved indications for Keryx's first medicine, Auryxia (ferric citrate) tablets.

29.     Auryxia was approved by the FDA on September 5, 2014 for the control of serum phosphorus levels in adult patients with chronic kidney disease on dialysis, and approved by the

FDA on November 6, 2017 for the treatment of iron deficiency anemia in adult patients with chronic kidney disease not on dialysis.  Auryxia tablets were designed to contain 210 mg of ferric iron, equivalent to 1 gram of ferric citrate, and offers mealtime dosing.

30.     On June 28, 2018, Keryx's Board caused the Company to enter into the Merger Agreement.

31.     Pursuant to the terms of the Merger Agreement, Keryx's stockholders will receive 0.37433 shares of Parent common stock for each share of Keryx they own.

32.     According to the press release announcing the Proposed Transaction:

Akebia Therapeutics, Inc. (NASDAQ:AKBA) and Keryx Biopharmaceuticals, Inc. (NASDAQ:KERX) today announced that the companies signed, and the boards of directors of both companies have unanimously approved, a definitive merger agreement under which the companies will combine in an all-stock merger. The transaction will create a fully integrated biopharmaceutical company focused on chronic kidney disease (CKD), with an implied pro forma equity value of approximately $1.3 billion, assuming full conversion of Keryx's outstanding convertible notes, based on the closing prices of Keryx and Akebia on June 27, 2018. The combined company will be named Akebia Therapeutics, Inc.

Under the terms of the agreement, Keryx shareholders will receive 0.37433 common shares of Akebia for each share of Keryx they own. The exchange results in implied equity ownership in the combined company of 49.4 percent for Akebia shareholders and 50.6 percent for Keryx shareholders on a fully-diluted basis. John P. Butler, President and Chief Executive Officer of Akebia, is expected to lead the combined company, and Keryx will appoint the Chairperson of the Board of Directors of the combined company. Additionally, Jason A. Amello, Akebia's Chief Financial Officer, is expected to serve in the same capacity on the management team of the combined company.

The Baupost Group, L.L.C., which owns approximately 21.4 percent of the outstanding Keryx common stock prior to any conversion of its convertible notes, has agreed to convert its outstanding convertible notes of Keryx into shares of Keryx common stock prior to closing and has entered into a voting agreement in support of the transaction. Muneer A. Satter, Chairperson of the Akebia Board of Directors and a shareholder who owns approximately 5.3 percent of outstanding Akebia common stock, has also agreed to support the transaction by entering into a voting agreement.

The merger of Akebia and Keryx creates a renal-focused company committed to developing and delivering innovative therapeutic products. Keryx's Auryxia® (ferric citrate) is a U.S. Food and Drug Administration (FDA)-approved medicine to treat dialysis dependent CKD patients for hyperphosphatemia and non-dialysis dependent CKD patients for iron deficiency anemia (IDA). Akebia's vadadustat is an investigational Phase 3 oral hypoxia-inducible factor prolyl hydroxylase inhibitor (HIF-PHI) with the potential to advance the treatment of patients with anemia due to CKD, many of whom are currently receiving injectable erythropoietin-stimulating agents (ESAs). The companies believe that Auryxia and vadadustat, if FDA-approved, have the potential to deliver an all-oral treatment approach for patients with anemia due to CKD. More broadly, the combined company has the potential to offer therapeutic options to patients across all stages of CKD, including non-dialysis dependent and dialysis dependent patients, and to become a partner of choice for the renal community and for companies developing renal products. . . .

Strategic Rationale

The merger offers potential operating and product portfolio synergies, with the opportunity to create significant value and accelerate the growth potential beyond what either company would achieve separately.

Establishes a Leading Renal Company with Enhanced Position and Large Market Opportunity

Combining Akebia and Keryx is expected to create a sustainable, kidney disease-focused, therapeutic leader that is well positioned to be a partner of choice throughout the renal community and for companies with products for patients with kidney disease. The merger creates a fully integrated renal company with a complementary portfolio comprising Keryx's FDA-approved Auryxia and Akebia's product candidate, vadadustat.

Auryxia is a phosphate binder indicated for the control of serum phosphorus levels in adult patients with CKD on dialysis, and an iron replacement product indicated for the treatment of iron deficiency anemia in adult patients with CKD who are not on dialysis. The approval and commercialization of Auryxia provides a new prescription oral treatment option for the millions of CKD patients with either hyperphosphatemia or iron deficiency anemia.

Vadadustat is a once-daily, oral investigational drug being studied in large-scale global Phase 3 clinical trials in both non-dialysis dependent and dialysis dependent patients with anemia due to CKD. Vadadustat's mechanism of action is designed to mimic the physiologic effect of altitude on oxygen availability. Vadadustat has the potential to become a new standard of care for patients with anemia due to CKD who currently rely on injectable ESAs, a multi-billion-dollar market.

The combined company will have the opportunity to provide nephrologists with a portfolio of renal products, subject to vadadustat's FDA approval, that can address the needs of an estimated 1.7 million patients who are non-dialysis dependent and 500,000 dialysis-dependent patients in the United States, across the continuum of CKD.

Creates Potential for Accelerated Growth and Organizational Synergies

The combined company brings together Keryx, a commercial organization, with Akebia, a leader in the development of HIF-PHI therapeutics for patients with kidney disease. The combined company will have an established renal development, manufacturing and commercial organization, and plans to leverage its leadership's extensive expertise in the commercial renal market with the goal of maximizing sales of Auryxia while driving launch momentum for vadadustat in the United States, subject to its regulatory approval. Keryx's established U.S. sales and marketing organization and its medical affairs team have built strong awareness within the nephrology community to address the needs of patients with CKD, and will drive the launch preparation and execution for vadadustat in the United States, subject to its regulatory approval.

Combines Experienced Renal Management Teams

The combined company will be led by a management team with a long track record of success developing, launching and commercializing products for patients with kidney disease. John P. Butler, who will lead the combined company as Chief Executive Officer, has nearly two decades of executive experience in the commercial renal therapeutic field, including as the leader of Genzyme Corporation's renal business, which grew from $150 million in revenue to over $1 billion under his leadership.

Strengthens Financial Profile

The combined company will have $453 million in cash on its balance sheet (unaudited pro forma cash balance as of March 31, 2018), which, along with the expected cost synergies of greater than $250 million to be realized five years following closing, and the potential for increasing revenues from Auryxia, are expected to provide the combined company with significant financial strength and flexibility to enable continued growth.

Combined Company Board of Directors

The Board of Directors of the combined company is expected to consist of nine directors, four of whom are Akebia directors and four of whom are Keryx directors. Keryx will appoint the Chairperson of the Board of Directors of the combined company.

Timing and Approvals

The transaction is expected to close by the end of 2018, subject to the satisfaction of customary closing conditions, including clearance by antitrust authorities and approval by the shareholders of both companies.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

33.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

34.     As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

35.     First, the Registration Statement omits material information regarding the Company's, Akebia's, and the combined company's financial projections, and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, MTS Health Partners L.P. ("MTS").

36.     With respect to Keryx's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

37.     With respect to Akebia's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

38.     With respect to the combined company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

39.     With respect to MTS's Keryx Discounted Cash Flow Analysis, the Registration

Statement fails to disclose: (i) the basis for using revenue achievements of 75% to 125%; (ii) Keryx's terminal value; (iii) the inputs and assumptions underlying the weighted average cost of capital range of 11% to 15%; and (iv) all line items used to calculate unlevered free cash flow.

40.     With respect to MTS's Public Trading Comparable Companies Analyses, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by MTS in the analyses.

41.     With respect to MTS's Akebia Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the basis for using revenue achievements of 50% to 150%; (ii) Akebia's terminal value; (iii) the inputs and assumptions underlying the weighted average cost of capital range of 13% to 17%; (iv) all line items used to calculate unlevered free cash flow; and (v) the probabilities of success as provided by Keryx management.

42.     With respect to MTS's Pro Forma Combination Analysis, the Registration Statement fails to disclose the projected synergies used by MTS in the analysis.

43.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.     Second, the Registration Statement omits material information regarding the Company's second financial advisor, Perella Weinberg Partners ("Perella").

45.     The Registration Statement fails to disclose the terms of Perella's engagement.

Among other things, the Registration Statement fails to disclose the amount of compensation Perella will receive in connection with its engagement.  The Registration Statement also fails to disclose whether Perella has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Perella for such services.

46.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47.     Third, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

48.     Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications, as well as which directors will serve on the post-transaction board of directors.

49.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50.     The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Keryx's Reasons for the Merger; Recommendation of the Keryx Board; (iii) Certain Keryx Management Unaudited Prospective Financial

Information; (iv) Certain Akebia Management Unaudited Prospective Financial Information; and (v) Opinion of Keryx's Financial Advisor – MTS Securities, LLC.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Keryx

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Keryx is liable as the issuer of these statements.

54.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

55.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

57.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Akebia

60.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.     The Individual Defendants and Akebia acted as controlling persons of Keryx within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Keryx and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62.     Each of the Individual Defendants and Akebia was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

64.     Akebia also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

65.     By virtue of the foregoing, the Individual Defendants and Akebia violated Section 20(a) of the 1934 Act.

66.     As set forth above, the Individual Defendants and Akebia had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  October 23, 2018

**ANDREWS DEVALERIO LLP**

By:   */s/ Daryl Andrews*
_____
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
265 Franklin Street, Suite 1702
Boston, MA 02100
(617) 936-2796
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

14